## GIUDICE v. DELAWARE SAND & GRAVEL CO.

### No. 59.

District Court, D. Delaware.

April 2, 1941.

H. J. Seman, of Philadelphia, Pa., and Aaron Finger (of Richards, Layton & Finger), of Wilmington, Del., for plaintiff.

James R. Morford and William Marvel (of Marvel & Morford), both of Wilmington, Del., for defendant.

NIELDS, District Judge.

This is an action to recover damages for personal injuries.

February 27, 1939, plaintiff was working as a cement finisher in completing a half dozen houses on Blue Rock Road at Edgewood Hills, north of Wilmington, Delaware. In the afternoon of that day he was engaged in cement work in front of the garage connected with one of the houses. A truck of the defendant was delivering a second load of sand and gravel at the buildings. It was part of the duty of plaintiff to receipt for material and supplies when delivered. The truck stopped on the highway, called Blue Rock Road, in front of the garage. The driver called to the plaintiff and inquired "Hey, boss, where do you want the stone". Plaintiff replied: "I want it near the mixers, the concrete mixers". The mixer was about 50 feet back from the highway. There was no road from the Blue Rock Road to the mixer, but only a temporary roadway formed of ruts. The ground was unsodded and soft.

Having learned from plaintiff where the load was to be delivered the driver proceeded to back his truck from the highway along the temporary roadway towards the concrete mixer. The driver was seated on the left-hand side of the cab behind the wheel with the left-hand door open. He looked back along the left-hand side of his truck. The concrete mixer was always in view. Plaintiff was standing to the rear and to the right of the truck. He testified: "I call him to come back, to watch him to come back". Plaintiff testified that he wanted to pick a big rock out of the path of the truck as it backed toward the concrete mixer. The truck moved slowly following the directions given by plaintiff. The front of the truck was 15 to 20 feet back from the highway when the plaintiff cried out and the driver stopped the truck. It is difficult to determine from plaintiff's own testimony whether he removed the stone before the truck reached it or whether, as he says, "The truck stopped against the stone, * * *". As a reason for the removal of the stone plaintiff testified: "Because I no want him to get stuck near the stone when he come back".

As to the movement of the truck immediately preceding the accident Stafford, the driver, testified:

"A. I goes on and gets in my truck and starts backing in, and he kept telling me 'Come on back'; and there is a kind of slope, and the truck was sliding that way, and he was on the opposite side of the truck telling me to come back. So when I get back there after a while, I heard him holla, and I stopped; and I stopped and he was laying down there in the mud.

"Q. When you were in your cab, I assume you were sitting in the lefthand side of the cab, weren't you? A. Yes, sir.

"Q. Could you see Giudice when you were backing back in there? A. No, sir.

"Q. Could you hear his voice? A. Yes, sir.

"Q. Could you tell from his voice whether he was on the right side of your truck to the rear, or to the left side of the truck? A. I could see from my left side, but I couldn't see from the right side.

"Q. Was his voice coming from the left side or from the right side? A. Coming from the right side.

"Q. What did he say? What did you hear that voice that you recognized, as you say, say? A. 'Come on back, come on back'."

The only other person present was Fred Chiappi. He testified that he did not see the accident and did not hear plaintiff give directions to the driver, but heard him holler when struck. However, he did testify that plaintiff went out in the road to where the truck had stopped and started directing the driver as to how to back into the yard. Moreover, the plaintiff himself testified that he did call to the driver to come back.

Plaintiff had been working for over a year on the construction of numerous houses at this site. He was entirely familiar with the character of the ground in the winter season. It was part of his duty to give instructions as to where the material should be placed and to receipt for material when delivered. It was customary for the driver of a truck delivering material to rely upon directions given by plaintiff or someone in like authority. Plaintiff gave the instructions that afternoon.

The driver of the truck had been working for the defendant company for over three years. He had been driving trucks over 25 years. By leaving the left-hand door of the cab open he was able to see the cement mixer as he backed the truck in. He was able to hear plaintiff's orders to back. The driver could not see back of the right rear end of the truck and was justified in relying upon plaintiff's voice as his "eyes". The driver backed the truck through the mud in a series of intermittent jerks. This is common and approved practice. When plaintiff stepped into the path of the truck to remove a stone and upon rising was struck on the back of the head the injury was self-inflicted. The negligence causing the injury was solely the negligence of the plaintiff. It is not suggested that there was any defect in the brakes of the truck nor was there negligence in its operation.

Defendant in the present case was guilty of no act causing injury to plaintiff. Plaintiff himself did not act as a reasonably careful person would have acted under the circumstances and his negligence was the proximate cause of his injuries.

He had knowledge not only that the truck would back toward the concrete mixer, but had so directed. Defendant exercised ordinary care in proceeding as directed in the reasonable belief that plaintiff standing at the right-hand rear of the truck would remain outside of its backward path.

When counsel for plaintiff was requested to define the negligence upon which he relied, he said: "I say that the act of negligence in this case is the driving of a truck backwards over wet, slippery ground, without being able to see, admittedly without being able to see, where he was going". Defendant answers, that a person backing a truck can not see all the ground in the rear of the truck. It is impossible to do so. The driver having the door open and looking backward used plaintiff's eyes and voice to guide him on the right side. He was doing all that a reasonably prudent person could do under the circumstances.

Finding that the defendant was not guilty of any negligence causing injury to the plaintiff, it is unnecessary to consider the other defenses.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The complaint must be dismissed.